IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**MARTY REGISTER on behalf of
DEBORAH BRANNON,**

    Plaintiff,

vs.                                             CASE NO. 1:05cv9-MP/WCS

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Deborah Brannon, who died on January 9, 2003, applied for disability insurance benefits and supplemental security income benefits in 1996.  Plaintiff's husband, Marty Register, continues the case on her behalf.   Plaintiff was 44 years old

at the time of the amended alleged onset date, June 1, 1999.  R. 435.  She had a high school education, and had past relevant work as an x-ray technician and a salesperson in a florist shop.  *Id.*  Her claim for disability is based upon depression and pain.

The lengthy procedural history of this case is set forth in detail in both memoranda.  Docs. 14 and 18.  On April 9, 2003, this Court reversed the decision of the Commissioner and remanded for further proceedings at steps 3, 4, and 5 pursuant to sentence four of 42 U.S.C. § 405(g).  Case number 1:01cv152-MMP/MCR, docs. 24 and 23 in that file; R. 484-506 in this file.

After remand, the Administrative Law Judge found that during the period from June 1, 1999, to November 30, 2002, Plaintiff was able to perform a significant range of light work.  R. 441.  Relying upon vocational testimony, she determined that Plaintiff was not disabled as defined by Social Security law during this period.  R. 442.

The ALJ also found that after December 1, 2002, Plaintiff's depression grew worse and she was disabled after that point.  R. 442.  Plaintiff died, however, on January 9, 2003.  *Id.*  Since there is a five month waiting period before the first disability check is paid, disability payments never commenced for this period of disability.  *Id.*  At issue is the closed period of disability from June 1, 1999, to November 30, 2002.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Analysis**

Plaintiff first argues that on remand the Administrative Law Judge failed to consider Plaintiff's physical impairments in combination with her mental impairments.[1] Doc. 14, p. 19. Except to contend that this is "plain," no argument as to physical impairments follows this point of law. Id. The argument that follows addresses the evidence of Plaintiff's mental impairments. Id., pp. 19-20. The claim that the ALJ failed to consider Plaintiff's physical impairments in combination with her mental impairments, therefore, is unsupported and unpersuasive.

Plaintiff next argues that the ALJ erred in finding that Plaintiff's depression and anxiety only became "severe" after December 1, 2002. Doc. 14, p. 20. It is argued that this finding is not supported by substantial evidence. Id. It is argued that "[a]n impairment is not severe if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to

---

[1] The report and recommendation in case number 1:01cv152-MMP/MCR, adopted by the Court, stated that upon remand, the ALJ was required to consider Plaintiff's physical and mental impairments together. R. 495.

work, irrespective of age, education, or work experience," citing, *inter alia*, <u>Brady v. Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984). *Id.*, p. 21. At a later point in the memorandum, Plaintiff argues that "[t]he claimant's burden of showing severity is mild, as he or she 'need show only that [his or] her impairment is not so slight and its effect is not so minimal.' " *Id.*, p. 26. Cited for this rule of law is <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1031 (11th Cir. 1986). *Id.*

This argument is misguided and unpersuasive. The cases cited discuss the meaning of "severe" at step 2 of the analysis. Further, on remand at step 2 of the analysis, the ALJ did find that Plaintiff's mental impairment *was* "severe."[2]  R. 441, ¶ 3.

Plaintiff also argues, in effect, that there was a lack of substantial evidence for ALJ's residual functional capacity finding that during the period from June 1, 1999, through November 30, 2002, Plaintiff's depression and anxiety caused only mild or moderate difficulties in activities of daily living and social functioning, and in maintaining concentration, persistence, and pace. Doc. 14, pp. 19-26. Cited in support of this argument are mental health records dated November 18, 1996, from Robert B. David, Ph.D. (R. 157-158), a discharge summary from Nature Coast Regional Hospital dated May 14, 1996, (R. 147-148), a Psychiatric Review Technique Form dated December 8, 1996, (R. 159-168), a Psychiatric Review Technique Form dated July 28, 1997, (R. 245-

---

[2] Indeed, this was one of the purposes of remand. This Court found in case number 1:01cv152-MMP/MCR that the ALJ erred at step 2 by failing to find that Plaintiff's mental impairment was "severe." R. 495. This error was corrected on remand as noted above. The ALJ found her mental impairment to be "severe," evaluated the claim at steps 3 and 4, and then decided the case at step 5.

253), mental health treatment records from Dr. Springer of the Springer Group dated February, 1999, to November, 2000, (R. 343-357), and a vocational suitability assessment by Karen Summers dated May 28, 1999 (R. 275-281).  Doc. 14, pp. 20-26.

Defendant argues that the evidence from Robert B. David, Ph.D. (1996), the Nature Coast Regional Hospital (1996), and the two Psychiatric Review Technique Forms dated December 8, 1996, and July 28, 1997, is not relevant because the evidence does not "relate" to the period under review, commencing on June 1, 1999.  Doc. 18, pp. 3-4.  Cited for this argument is Krogmeier v. Barnhart, 294 F.3d 1019, 1024-25 (8th Cir. 2002), a case that simply holds that a sentence six remand is not needed if there is no reasonable likelihood that the "new" evidence would have changed the decision; as, for example, where the evidence is similar to evidence already in the record.  Id.

This standard for the propriety of a remand when "new" evidence is presented does not apply here.  This evidence is not new.  It has been in this record from the beginning of this case.  The issue here is whether the evidence was relevant for the ALJ's evaluation at steps 3, 4, and 5 on this remand.  The impairments in 1996 and 1997 may have been chronic and may have grown worse as time passed.  Thus, such evidence of was potentially relevant to the period under review, commencing on June 1, 1999.

Defendant has made no argument concerning the importance of the evidence.  The first and second Administrative Law Judges similarly did not mention the evidence

from Robert B. David, Ph.D., the Nature Coast Regional Hospital, and the two Psychiatric Review Technique Forms.  R. 21-22; 436-437.  It is an acceptable presumption, however, that this evidence was considered by both Administrative Law Judges since  the evidence was in the record.

The earliest of these records is dated May 14, 1996, from the Nature Coast Regional Hospital.  R. 147-155.  This record concerns a one day stay in that hospital for an overdose of alcohol and Xanax.  R. 147.  An anxiety attack was one of the admitting diagnoses.  *Id.*  It was noted that Plaintiff was upset that her son was in the hospital, and she had had an argument with her son's step-father.  R. 154.  Plaintiff went home before completion of the intended observation period.  R. 148.

The second record is from Dr. David dated November 18, 1996.  R. 156-158.  He examined Plaintiff on a consultative basis on November 12, 1996.  R. 156.  Dr. David found no significant deficits in Plaintiff's orientation, memory, or perceptions.  R. 157.  He found her mood to be depressed.  *Id.*  He said that she reported that she had anxiety attacks once a week, but the attacks did not limit her ability to travel, shop, or engage in other activities that brought her into close proximity with people.  R. 157-158.  He thought that her symptoms were caused at least in part from the long history of childhood sexual abuse that she had suffered.  R. 158.  He concluded that Plaintiff's anxiety attacks "contribute significantly to her current apparent inability to maintain gainful employment."  *Id.*

The first Psychiatric Review Technique form was completed in December, 1996, by a non-examining physician, finding that Plaintiff's anxiety attacks were not limiting. R. 160.  It was found that while she "may have some depressive and anxiety symptoms . . . she presents and relates appropriately, drives, shops, [and] does basic household chores."  *Id.*  It was found that she retained adequate mental ability to carry out simple instructions, make simple decisions, respond to routine changes in the work setting, and relate appropriately to others in a work setting.  R. 160, 168.  No limitations were noted. R. 166.  Her mental impairment was deemed to be not severe.  R. 159.

The second Psychiatric Review Technique form was completed by T. Wayne Conger, Ph.D., on July 28, 1997.  R. 245.  Dr. Conger found that Plaintiff's mental impairment was "severe," that is, it met the criteria at step 2 for a "severe" impairment and thus completion of an RFC (residual functional capacity) assessment was necessary.[3]  *Id.*  Dr. Conger wrote:

> The claimant is physically limited to some extent but is mentally capable of performing a wide range of routine tasks.  She may experience some mild anxiety/depression due to her physical condition.  However, she is able to maintain attention and has an overall adequate mental status.  At this

---

[3] "To determine whether an applicant can return to a former job or, if never employed, can perform substantial work in the national economy, the regulations require the ALJ to evaluate the applicant's RFC.  *See Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir.1983) (citing 20 C.F.R. §§ 404.1561, 416.961)."  Robinson v. Barnhart, 248 F.Supp.2d 607, 617 (S.D. Tex. 2003).  "This assessment of RFC is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age, education, and work experience." SSR 96-8p, 1996 WL 374184, *2.

> time, there is no indication of a mental impairment that would meet or equal any listing.

R. 246. Dr. Conger thought that Plaintiff's mental impairment would slightly restrict her activities of daily living and social functioning, would never result in deterioration in a work setting, but, somewhat contrary to the opinion quoted above, he thought that her mental condition would often cause deficiencies of concentration, persistence or pace. R. 252.

With the exception of Dr. David's conclusion that Plaintiff's anxiety attacks would "contribute significantly to her current apparent inability to maintain gainful employment," none of the evidence set forth above would support a conclusion that Plaintiff's mental impairment was disabling after June 1, 1999. At most, it would support a conclusion of mild restrictions, thus undercutting Dr. David's statement about contributing to an inability to maintain gainful employment. Further, the evidence arose primarily in 1996 and 1997, several years before the alleged onset date. Thus, this evidence does not demonstrate Plaintiff's proposition that the ALJ's residual functional capacity assessment was not supported by substantial evidence in the record.

Plaintiff also cites to the records of Dr. Springer. The medical records from Dr. Springer from March, 1999, to March, 2000, were discussed in detail in the report and recommendation in case number 1:01cv152-MMP/MCR. R. 491-492. That report and recommendation was adopted by the district judge, and thus became the opinion of the Court. The Court noted that "the canned comments apparently generated by Dr.

Springer's 'interactive notes' computer program are so non-individualized and at times so contradictory on their face as to significantly reduce the overall credibility and reliability of his records." R. 496-497. The Court concluded that "the ALJ's refusal to credit Dr. Springer's opinion of total disability is supported by substantial evidence and thus that the ALJ had good cause to reject it." R. 497. Plaintiff has not argued any basis to change that determination and it is binding at this stage of the case. Dr. Springer's medical notes do not constitute substantial evidence in the record contrary to the ALJ's determination of residual functional capacity on remand.

The remaining evidentiary item argued by Plaintiff is a vocational suitability assessment by Karen Summers dated May 28, 1999, prepared at Abilities of Florida, Inc. R. 275-281. Ms. Summers felt that due to Plaintiff's "considerable chronic pain and depressive symptoms, as well as her other health issues it is not considered feasible for her to proceed with vocational rehabilitation." R. 280. In case number 1:01cv152-MMP/MCR, however, this Court found that this vocational evaluation was not evidence from an "acceptable medical source," citing 20 C.F.R. § 404.1513(a)(e). R. 497. This was an implicit finding that it was not error for the ALJ in the first decision to fail to give it much weight. *Id.* A basis for setting aside this ruling has not been shown. Thus, this is not substantial evidence in the record contrary to the ALJ's determination of residual functional capacity on remand.

Since Plaintiff's arguments are unpersuasive, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for benefits for the period from June 1, 1999, to November 30, 2002, be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 29, 2005.


       s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**